UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

ATIYA DOZIER, o/b/o G.R.A.,

                Plaintiff,           **MEMORANDUM & ORDER**
                             19-cv-4588(EK)

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

      Atiya Dozier, proceeding *pro se* on behalf of her minor daughter, G.R.A., appeals the denial of G.R.A.'s application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  The Commissioner of Social Security (Commissioner) moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, requesting that this Court affirm the Commissioner's determination and dismiss the action.  As explained below, the Commissioner's motion is granted, and this action is dismissed.

## I.   Background

      G.R.A. was born on December 16, 2014, approximately six weeks before full term.  Tr.[1] 50, 210.  On May 14, 2015, when G.R.A. was roughly six months old, Plaintiff applied for

---

[1] Citations to "Tr." refer to the Administrative Transcript and its pagination.  *See* ECF No. 8.

1

disability benefits on her behalf.  Tr. 114-17.  The application listed the following disabling conditions beginning at birth: "premature birth," low "gestation age & weight," and "developmental delay."  Tr. 128.

On August 31, 2015, the Commissioner issued an initial determination denying her application, following a report from state agency consultative doctor J. Pauporte.  Tr. 64-81. Ms. Dozier then requested a hearing before an Administrative Law Judge (ALJ).  Tr. 79-81.  The assigned ALJ, Paul Greenberg, held a video hearing on January 11, 2018; Ms. Dozier participated without counsel.  Tr. 37-63.  At the hearing, the ALJ requested that G.R.A. undergo two consultative examinations, one by a medical doctor and another by a psychologist.  Tr. 61. Christopher Flach, Ph.D., and Gregory Bard, M.D., conducted those examinations on February 14, 2018.  Tr. 454-63.

The ALJ denied G.R.A.'s application on August 27, 2018.  He found that G.R.A.'s impairments were "severe" but still did not meet the definition of "disabled" under the Social Security Act.  Tr. 12-33.  This decision became final on July 16, 2019, when the Social Security Administration's Appeals Council denied Ms. Dozier's request for review.  Tr. 1-6.

Ms. Dozier filed this action on August 7, 2019, seeking this Court's review of the Commissioner's decision.  ECF No. 1.  After submitting the administrative record, ECF No. 8,

the Commissioner moved for judgment on the pleadings, claiming its decision was supported by substantial evidence.  ECF No. 10. Ms. Dozier did not respond to the Commissioner's motion.  After granting her two extensions, the Court allowed the Commissioner to file its motion unopposed.  The Court then held oral argument on September 21, 2020, where Ms. Dozier appeared without counsel.

After hearing from Ms. Dozier, the Court granted her a third opportunity to submit an opposition to the Commissioner's motion, which she did on October 8, 2020.  ECF No. 18.  In her submission, Ms. Dozier claims the ALJ "did [not] thoroughly look through [G.R.A.'s] file" or "make the right decision" with respect to her application.  *Id.* at 3.  She notes the tension in the ALJ's finding that G.R.A.'s condition was "severe" but not "severe enough" to approve her application.  *Id.* at 2.  Ms. Dozier also argues that G.R.A.'s "disability had a progression since birth."  *Id.*

## II.  Standard of Review

District courts review SSI denials under 42 U.S.C. § 405(g), which grants them "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*  This statute, however, provides that the "findings of the

3

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* Accordingly, in reviewing actions under this section, this Court considers only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005).

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial-evidence test applies not only to the Commissioner's factual findings, but also to the inferences and conclusions of law drawn from those facts. *See, e.g., Carballo ex rel. Cortes v. Apfel*, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether substantial evidence exists, the Court must examine the entire record, weighing evidence on both sides to ensure that the claim was "fairly evaluated." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999). If the Court finds this standard met, it must uphold the Commissioner's decision — even if substantial evidence also supports the applicant's position, and even if the Court, starting from scratch, would have reached a different decision. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

4

### III. Statutory and Regulatory Standards

Section 1382c of the Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled" if the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(c). In performing this analysis, the Commissioner follows regulations issued by the Social Security Administration. These regulations prescribe a sequence of tests to determine eligibility. 20 C.F.R. § 416.924 outlines the analysis for claims like this.

First, the Commissioner must confirm the applicant is not "doing substantial gainful activity." § 416.924(a). Then, the Commissioner must determine whether the applicant has "an impairment or combination of impairments that is severe." *Id.* To satisfy this inquiry, the applicant must exhibit "medically determinable impairments,"[2] which cause more than "slight abnormalities" and "minimal functional limitations." § 416.924(c). If such impairments exist, the Commissioner must then consider whether the child has any combination of medically determinable impairments that "meets, medically equals, or functionally equal[s]" one of the SSA's "listings" in 20 C.F.R.

---

[2] "Medically determinable impairments" are impairments that "result from anatomical, physiological, or psychological abnormalities that can be shown by medically clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.

Part 404, Subpart P, Appendix 1 for compensable disabilities. § 416.924(d). In this final step, the Commissioner first examines whether the child has impairments that meet the criteria and severity level for a specified listing, or whether the child has an impairment or combination of impairments that are of "equal medical significance" to one of the listings. 20 C.F.R. § 416.926(a)-(b). If not, the Commissioner considers whether the applicant's cumulative impairments, severe or otherwise, "functionally equal the listings," even though they do not meet any particular listing. § 416.926a(a).

In determining whether an applicant's condition functionally equals a listed impairment, the Commissioner considers the applicant's level of functioning across six factors, called "domains":

(i)     Acquiring and Using Information

(ii)    Attending and Completing Tasks

(iii)   Interacting and Relating with Others

(iv)    Moving About and Manipulating Objects

(v)     Caring for Yourself

(vi)    Health and Physical Well-Being

§ 416.926a(b).

To deem a child disabled under this functional test, the Commissioner must find "marked" limitations in two domains or an "extreme" limitation in one. § 416.926a(a). A "marked"

limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," and "is the equivalent of the functioning" expected from "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." § 416.926a(e)(2)(i).  By contrast, an "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," corresponding to "standardized testing with scores that are at least three standard deviations below the mean." § 416.926a(e)(3)(i).

### IV.  The ALJ's Decision

Here, the ALJ deemed G.R.A. ineligible at the final step.  In other words, the ALJ concluded that G.R.A. was not "doing substantial gainful activity" and that she had "severe" medically determinable impairments — namely, a "seizure disorder" and "learning disorder,"[3] Tr. 19 — but that her conditions did not "meet, medically equal, or functionally equal the listings."  Specifically, the ALJ considered the listings for "Epilepsy" (Listing 111.02) and for Developmental Disorders

---

[3] The ALJ found that G.R.A. did not have a severe impairment with respect to her premature birth, anemia, or visual disturbances.  Tr. 19.  Ms. Dozier does not appear to dispute these findings.  They are, in any event, supported by substantial evidence for the reasons stated in the ALJ's decision.  *Id.*

in Infants and Toddlers (Listing 112.14) but found that G.R.A.'s conditions did not meet or medically equal those criteria, or otherwise cause the level of functional limitations needed to qualify for SSI.

## V.   Discussion

For the reasons described below, the ALJ "adequately explain[ed] his reasoning," "address[ed] all pertinent evidence," and identified "the crucial factors . . . with sufficient specificity." *Albano v. Colvin*, 99 F. Supp. 3d 355, 360 (E.D.N.Y. 2015). Accordingly, the ALJ's decision was supported by substantial evidence.

### A.   Seizure Disorder

With respect to the reported seizure disorder, the ALJ considered Listing 111.02 for Epilepsy, which requires, among other things, evidence of "[g]eneralized tonic-clonic seizures . . . occurring at least once a month for at least 3 consecutive months" or "[d]yscognitive seizures . . . occurring at least once a week for at least 3 consecutive months." 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that G.R.A.'s seizure history neither met this standard nor medically or functionally equaled any listing. These findings are supported by substantial evidence. There was no evidence that G.R.A. has suffered seizures with the frequency described in Listing 111.02. Tr. 19. Although Dr.

Bard diagnosed her with a seizure disorder, the ALJ found that this diagnosis was supported by "very slim" evidence. Tr. 21-22. As the ALJ explained, there was no evidence of any hospitalization, treatment, medication, or any "objective workup" explaining this diagnosis. Tr. 19-22. The record also suggests these seizures may have ceased. Tr. 34. (August 15, 2018 report stating that G.R.A. had "symptoms of seizure in infancy" but "no incidents since then"). Accordingly, substantial evidence supports the Commissioner's finding that G.R.A.'s seizure activity did not meet, medically equal, or functionally equal any listing, either on its own or together with other impairments.

B.    Developmental Disorder

Turning to Listing 112.14 for Developmental Disorders in Infants and Toddlers, the ALJ considered the following criteria:

> 112.14. Developmental disorders in infants and toddlers, satisfied by A and B:
> A.    Medical documentation of one or both of the following:
>     1.    A delay or deficit in the development of age-appropriate skills; or
>     2.    A loss of previously acquired skills.
> AND
> B.    Extreme limitation of one, or marked limitation of two, of the following developmental abilities:
>     1.    Plan and control motor movement
>     2.    Learn and remember

         3.    Interact with others
         4.    Regulate physiological functions, attention, emotion, and behavior.

20 C.F.R. Part 404, Subpart P, Appendix 1.

The Commissioner concluded that G.R.A.'s delay-related impairments did not meet these criteria, and that they were not severe enough to medically or functionally equal any listing. Tr. 20.[4]

The ALJ found that G.R.A.'s "developmental delays" are "primarily in speech and motor skills," Tr. 22, though he acknowledged inattention and issues with tantrums and crying, among other things. Based on the record, the closest question appears to be G.R.A.'s delay in motor skills. As the ALJ noted, a report from May 29, 2015 found a delay in "gross motor" skills of "-2.0 SD from the mean." Tr. 263-64. Citing this report, Dr. Pauporte, the state agency consultative doctor from the Commissioner's initial determination in 2015, found that G.R.A. had marked limitations in the gross motor domain. Tr. 69. The ALJ gave Dr. Pauporte's opinion less weight, however, because the February 2018 examination by Dr. Bard, conducted more than two years later with the benefit of a more complete record, found G.R.A.'s "gross motor skills are normal for [her] age."

_____

[4] Because Listing 112.14 resembles the functional test, the Court conducts these analyses simultaneously.

Tr. 461.  This Court must "defer to the Commissioner's
conclusions regarding the weight of conflicting evidence."
*Valentin v. Commissioner*, 408 F. Supp. 3d 203, 206 (E.D.N.Y.
2019).  Because the record offers no other firm evidence of a
marked limitation in motor skills and the ALJ addressed relevant
counterevidence, substantial evidence supports the
Commissioner's finding of no marked limitation here.

The ALJ's findings with respect to the other domains
are also supported by substantial evidence.  The record does not
demonstrate that G.R.A.'s language delays, inattention, or
behavioral issues (like crying and tantrums) rise to the level
of marked limitations.  For instance, the reports from Drs. Bard
and Flach found that G.R.A.'s speech was "age appropriate" or
"normal," Tr. 456, 461, and that her behavioral and attention
issues ranged from "normal" to "moderate," Tr. 457, 461.  The
record also suggests G.R.A.'s cognitive functioning and adaptive
skills fall within normal limits, though the ALJ observed
certain documented issues there as well.

## VI.  Plaintiff's Opposition

Ms. Dozier argues, reasonably, that there is some
tension in the ALJ finding G.R.A.'s conditions "severe" but not
"severe enough" to qualify for SSI.  ECF No. 18 at 2.  The ALJ,
however, deemed G.R.A.'s impairments "severe" at step two but
"not severe" at step three because the definition of "severe"

changes at different points of the analysis.  At step two, where the ALJ first considered whether G.R.A. had "severe" impairments, the question was whether G.R.A. had more than a "slight abnormalit[y]" which caused "minimal functional limitations."  20 C.F.R. § 416.924(c).  The ALJ found that G.R.A. met that standard.  But then the ALJ needed to decide whether G.R.A.'s conditions met, medically equaled, or functionally equaled the listings, which requires finding G.R.A.'s impairments to be of "listing-level severity." §§ 416.926; 416.926a(a).  And at this stage, "severe" means something else.  Rather than asking whether G.R.A.'s impairments exceed "slight abnormalities," the question becomes whether they "interfere[] *seriously*" or "*very seriously* with [her] ability to independently initiate, sustain, or complete activities." §§ 416.926a(e)(2)-(3) (emphasis added).  The ALJ reasonably concluded that they did not.

*          *          *          *          *

In cases like this, ALJs must decide, in their experience, whether a child meets a standard that is difficult to define.  But so long as the ALJ's decision finds adequate support in the record, this Court must defer to it.  And in this case, the ALJ's decision does find such support.

## VII. Conclusion

For the reasons explained above, the Commissioner's motion for judgment on the pleadings is granted.  The Commissioner's decision is affirmed, and this action is dismissed.

SO ORDERED.

s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:     November 30, 2020
           Brooklyn, New York

13